P. H. MOORE et al. v. LEROY PARKER and Wife.

(Filed 2 December, 1908).

**Water and Water Courses—Diverting Stream—Right of User—Extent of Right.**

W. A., during his life, diverted the waters of R. Creek, so as to run into H. Creek to obtain additional water to supply his mill, and made an obstruction or dam in R. Creek at a certain height. After his death, his lands were partitioned among his heirs at law, and there was evidence that the plaintiff received the part upon which the mill was situated, with a provision, including the "full power of the mill shoal and water power on both sides of the mill, so as to keep it in repair and convey water to the mill," and the defendant received that part on which the dam on R. Creek was situated. Plaintiff sued for damages for defendant's obstructing his right to the use of the waters of R. Creek for milling purposes. *Held,* (1) It was not error in the trial Judge to instruct the jury that the plaintiff had the right to use the waters of R. Creek to the same extent as they find, from the greater weight of the evidence, W. A. had diverted it, if it was in contemplation of the commissioners at the time they made the partition; (2) The verdict being for plaintiff, he had the right to enter upon defendant's lands for the purpose of keep-

ing open the channel as originally used, and to keep up the dam at its original height; (3) The "full power" of the water is that required to run the mill with the dam at its original height, and it was not necessary for the jury, in this action, to find the quantity of water originally used.

ACTION tried before *Ferguson, J.,* and a jury, May Special Term, 1908, of WILKES.

Action against defendants for obstructing plaintiff's use of water from Rocky Creek to aid in running his mill, and counterclaim pleaded because plaintiff, by raising his dam, had water sobbed the land of defendant. The jury gave each side a verdict for $100.00.

The lands of the plaintiff and defendant formerly belonged to William Anderson. Hunting Creek and Rocky Creek both flowed through the lands of William Anderson. Upon the bank of Hunting Creek William Anderson built a mill.

Rocky Creek by its natural course ran into Hunting Creek about 100 yards below the mill, and naturally the water of Rocky Creek furnished no additional power to Anderson's mill. Anderson being the owner of the land, conceived the idea of increasing the power of his mill by cutting an artificial channel from Rocky Creek into the head of his mill pond on Hunting Creek. This channel was cut over the land which afterwards became lot No. 4, in the partition proceedings, and fell to the defendants.

After cutting this channel, it was necessary to keep a little dam or obstruction in Rocky Creek at the mouth of the channel in order to divert the water from its natural flow. William Anderson had the right, of course, to construct this channel, and to keep it in repair, and use the water for the purpose of increasing the power of his mill. During the remainder of his lifetime, he used the channel for thus conveying water whenever needed. At his death a partition proceeding was filed by his heirs at law for a division of his lands.

The commissioners went upon the premises, and divided

149—19

his lands into nine parts. This mill being situated upon the lands, in making a division, its value was considered. The mill without the water power, would be of very little value. It stood upon lot No. 9 owned by plaintiff, as to which the allotment provided, "so as to include the full power of the mill shoal and water power on both sides of the mill pond, so as to keep it in repair and convey water to the mill." From the verdict and judgment, the defendant appealed.

W. W. *Barber* for plaintiff.
*Finley & Hendren* for defendant.

CLARK, C. J. His Honor charged the jury: "It is conceded by both parties that William Anderson owned the lands in controversy, and that partition was had between his heirs, to one of whom section 9 was assigned, including the mill on Hunting Creek, and without giving a description of the land assigned it to C. L. Anderson. This provision is added to the general description: 'So as to include full power of the mill shoal and water power on both sides of the mill pond, so as to keep it in repair to convey water to the mill.' If you find from the evidence, by its greater weight, that at the time the partition was had, and therefore while William Anderson was the owner of all the lands set out in the partition proceedings, and the owner of the mill, that water was brought from Rocky Creek into the mill pond as a part of the water power necessary for running the mill, that the water power was included in the partition proceedings and assigned to C. L. Anderson, who was to be the owner of section No. 9, and if you should so find, then you will inquire whether the defendant has diverted the water from that course so as to lessen the water-power used by Anderson, and in contemplation of the Commissioners at the time they made the partition."

The defendant excepted, but we find no error.   The jury found that the defendant had wrongfully diverted the water, and wrongfully refused to allow the plaintiff to convey the water from Rocky Creek, to his damage $100.00, and that the plaintiff had maintained his dam at a height greater than the mill dam was at the time of the partition, thus overflowing and sobbing defendant's land to his damage $100.00. The Court thereupon adjudged that "the plaintiff is entitled to the use of the same amount of water as was usual to run through the artificial channel from Rocky Creek to the head of the mill pond of plaintiff, when a dam or obstruction was in the creek at the head of the channel, at or prior to the date of the partition of the lands of William Anderson, and such amount of water as was used by the said William Anderson, and the plaintiff shall have a right to enter upon the lands of the defendant for the purpose of keeping open the artificial channel used for diverting water from Rocky Creek to the mill pond, and also for the purpose of keeping such dam or obstruction in the creek as will cause the water to flow through the artificial channel in such quantity as was used by William Anderson during his lifetime, for the purpose of furnishing power to the mill.   It is further ordered and adjudged by the Court that the plaintiff recover of the defendant the sum of one hundred dollars for damages for the wrongful diverting of the water from the mill pond of the plaintiff's mill.   It is further considered and adjudged by the Court, that the jury having found that the plaintiff is maintaining his dam in excess of what it was at the date of the partition proceedings, and that by reason of said dam being raised and so maintained the land of the defendant has been sobbed, it is therefore considered and adjudged by the Court that the defendant recover of the plaintiff the sum of one hundred dollars for all damage—past, present and prospective, by reason of the raising of the dam to its present height, both parties consenting that the amount named should

be for all damages. It is further considered and adjudged by the Court that the plaintiff recover cost of the defendant in his action."

The defendants except, because the jury did not find how much water from Rocky Creek William Anderson was accustomed to use, but they submitted no issues or prayers on that subject. The contest was whether the plaintiff had an easement to use the water as William Anderson had done. There was no demand to more particularly specify its extent. The easement was to use enough water from Rocky Creek, added to that from Hunting Creek, to "include the full power of the mill shoal and water power on both sides of the mill pond" at the height of the dam when the mill was used by William Anderson, and now by this verdict, and with the consent of parties as expressed in the judgment, the "full power" is what is required to run the mill with the dam at its present height. If the plaintiff should seek to use more water from Rocky Creek than is reasonably necessary, and shall waste it by running it over his dam, the defendant by proper proceedings can have the extent of the easement more accurately measured and defined, unless the parties by themselves, or by friendly arbitration, shall agree upon what is an adequate but not excessive enjoyment of the easement, which they should be able to do, now that the legal questions involved are determined.

No error.